```
                    UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF MISSISSIPPI
                         ABERDEEN DIVISION


UNITED STATES OF AMERICA                              PLAINTIFF


VS.                                               NO. 1:19CR91


TIMOTHY VICKERS                                       DEFENDANT



                         SENTENCING HEARING


                  BEFORE HONORABLE SHARION AYCOCK
                  CHIEF UNITED STATES DISTRICT JUDGE


                         Oxford, Mississippi
                          January 28, 2020



APPEARANCES:


For the Government:   PAUL D. ROBERTS, Esquire
                      U.S. Attorney's Office
                      900 Jefferson Avenue
                      Oxford, MS  38655


For the Defendant:    M. SCOTT DAVIS, Esquire
                      Federal Public Defender's Office
                      1200 Jefferson Avenue, Suite 100
                      Oxford, MS  38655


Court Reporter:       PHYLLIS K. McLARTY, RMR, FCRR, CCR #1235
                      Federal Official Court Reporter
                      911 Jackson Avenue East
                      Oxford, MS  38655
```

1 (1:40 P.M.)

2 **THE COURT:** You may call the case.

3 **COURTROOM DEPUTY:** The Court calls Case Number
4 1:19CR91, United States of America versus Timothy Vickers.
5 This is a sentencing hearing.

6 **THE COURT:** Thank you.

7 Paul Roberts, Assistant United States Attorney,
8 represents the government in this proceeding. Scott Davis
9 represents the defendant. Kimberlee Hatter is our probation
10 officer, and she is in the courtroom.

11 So, Mr. Vickers, you're here today for sentencing.
12 Previously, you had entered a plea to Count 1 of the
13 information that you did travel in interstate commerce from
14 Alabama to Mississippi and back to Alabama with the motivating
15 purpose of engaging in illicit sexual conduct with a minor who
16 had not attained 18 years of age, that is, that you traveled
17 with intent to have sexual activity with the minor.

18 So you entered that plea on a previous occasion, and
19 you understand you are here today for sentencing?

20 **THE DEFENDANT:** Yes, Your Honor.

21 **THE COURT:** The Court has received a sentencing
22 memorandum as well as some letters that I have -- I have
23 reviewed. And then I note there are a number of persons here
24 in the courtroom, and I'm assuming they're here on Mr. Vickers'
25 behalf?

1    **MR. DAVIS:** Some of them are, Your Honor, yes.

2    **THE COURT:** All right. Do we have representatives
3    from the victim's family?

4    **MR. ROBERTS:** Your Honor, I have the victim and the
5    victim's mother in the courtroom.

6    **THE COURT:** Thank you very much.

7    So, typically, Mr. Vickers, what I would do is give
8    you an opportunity to speak, and then I'll call on Mr. Roberts
9    and back to Mr. Davis.

10   Now, a presentence report was forwarded to Mr. Davis.
11   Did you have an opportunity to review the presentence report
12   with him?

13   **THE DEFENDANT:** Yes, ma'am.

14   **THE COURT:** Mr. Davis, any objections?

15   **MR. DAVIS:** No, Your Honor.

16   **THE COURT:** Mr. Roberts, any objections?

17   **MR. ROBERTS:** There are no objections from the
18   government, Your Honor.

19   **THE COURT:** Okay. Do either of you anticipate calling
20   witnesses?

21   **MR. ROBERTS:** The government does not.

22   **MR. DAVIS:** No, Your Honor.

23   **THE COURT:** Thank you.

24   You may proceed, sir.

25   **THE DEFENDANT:** Your Honor, I am truly, truly sorry

1    for what I did.  It is a very -- it was a very heinous and
2    wrong thing to do.  I wish -- I regret it every day of my life.
3    I'm going to regret it.  And no words can describe how truly
4    sorry I am and how I was in my wrong mindset.  The whole time I
5    was drugged up using whatever I could get to try to fill a hole
6    that couldn't be filled, try to live a life that wasn't worth
7    living.

8            I was raised in a pretty good home, in a Christian
9    home, and I decided to not try to live that kind of lifestyle.
10   I tried to live my own way, and my own way of knowledge was not
11   the right way, of course.  And if I were -- had been in my
12   right mind, I would have not have -- even crossed my mind to do
13   something like this.

14           I am truly sorry to you and to the family, and I hope
15   one day that you and the family will be able to forgive me
16   because -- to -- to forgive me because it's truly not something
17   I would have done.

18           And I just look forward to the things when I do get
19   out in the world, to become a better person, to be -- to be a
20   builder of society and not a destroyer of it, not somebody that
21   convicts and -- commits crimes, but somebody that can help
22   other people not do something like this in their life, other
23   people who are bound up in everything that they are, and
24   hopefully try to pull them out of the hole that they're in and
25   show them that there is a different way to live.

      And, hopefully, by the time -- whatever you feel in your heart to give me, Your Honor, that I would do willingly, and that when I get out, I plan to stay on that right road.

      **THE COURT:** Okay. Thank you.

      Mr. Roberts.

      **MR. ROBERTS:** Your Honor, I think the presentence report accurately reflects the events of the case, and I think that the sentencing guideline range for the information is appropriate given the defendant's age and the actions that he undertook, and I would ask the Court to impose a sentence within that range.

      **THE COURT:** Thank you, sir.

      Mr. Davis.

      **MR. DAVIS:** Thank you, Your Honor.

      Your Honor, Mr. Vickers is a young man who has engaged in some significant soul-searching over the last number of months. I think when he -- when he expresses his remorse here this afternoon he is sincere. He understands the gravity, the magnitude of his conduct, and he knows he can't flip a switch and rewind time and make it go away, but what he can do is put in the effort himself to getting the help that he needs and to doing the right things going forward to try to atone for it. And he will spend the rest of his life essentially trying to atone for it.

      This is a young man who hasn't always had it easy. He

was in special ed going back to when he was in school. He has had -- struggled with different types of mental illness over his years. There have been multiple, in fact, somewhat lengthy inpatient stays at various facilities to try to help him get a handle on not only some struggles with mental illness but some drug use.

For a very young man, Mr. Vickers' history of drug use is not great. This is a young man who got off his medications and decided -- had a little bit of rebellious streak and got involved in some bad stuff. He was using drugs. He wasn't in his -- his normal mind, I would say, at the time of all of this, which is not to minimize it by any means. This is a very serious crime, and Mr. Vickers is truly remorseful for his conduct.

Now, going forward, Mr. Vickers has got the support of family. He does have his mother, his stepfather -- or his parents. His birth mother, I believe, is here as well, as well as his pastor. This is -- Mr. Vickers is fortunate in some regards, Your Honor. Not everybody who's standing where he's standing has that type of support to lean on. He does. And he's got good-hearted people who really care about him and are willing to do anything they can to help him going forward, and they're going to be there to do that.

And Mr. Vickers has not just spent this time while he -- there has been a lot of self-reflection, and he's spent a

lot of time sort of processing his own remorse about this. He also has tried to spend some time bettering himself. He's constantly bringing me certificates of his Baptism and meeting with different prayer groups and trying to -- trying to do whatever limited things he can while he's in custody to better himself to get his head and his heart in the right place so that he's got the best opportunity to succeed upon his release.

He is a very, very young man, Your Honor. He's 23 years old. And the sentencing guidelines call for 63 to 78 months, which for somebody that young, really for anybody, that's a pretty lengthy sentence. We're asking the Court to consider a downward variance from the guidelines.

I look at Mr. Vickers' situation and think this might be somebody who could benefit from some time in a halfway house, which I have no reason to believe he wouldn't be eligible for that at some point here. His adoptive mother is in Tupelo where he grew up, so he's got that network of support there. And while he's got some work history in the service industry, it's relatively limited, and I wonder if the resources that the halfway house has over there as far as job connections and those kind of things might not be a good thing for him as he eventually makes the transition back to society.

Your Honor, I think his head and his heart are in the right place right now. We ask the Court to take those things into account, take into account the letters. And I would

particularly draw the Court's attention to the letter from Ms. Kirksey, which I think provides some real insight into who he is and what he's been through -- she's been the main source of support in his life -- and then fashion the most lenient sentence the Court feels is appropriate.

Thank you, Your Honor.

**THE COURT:** The Court adopts the presentence investigation report without change.

No count of conviction carries a mandatory minimum sentence.

Mr. Vickers, your guideline offense level is 25 with a criminal history category of II. That does yield an imprisonment guideline sentence of 63 months up to 78 months; supervised release range, 5 years up to life; and 20,000 up to 200,000 for a fine. This is a very serious offense.

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** The statute carries a term of imprisonment up to 30 years --

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** -- a $250,000 fine, up to life on supervised release, and a $100 special assessment.

The sentence is within the guideline range, and the difference between the maximum and minimum of the guideline range does not exceed 24 months.

Restitution doesn't apply in your case.

In imposing sentence, the Court has considered the advisory guideline range, the statutory penalties, and the sentencing factors enumerated in 18 U.S.C., Section 3553(a)(2), which set forth the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment; to afford adequate deterrence to criminal conduct; to protect the public; to provide you with educational or vocational training, medical care, or other correctional treatment; and to avoid unwarranted sentencing disparities.

The Court finds no reason to depart from the sentence called for by the application of the guidelines insomuch as the facts as found are the kind contemplated by the sentencing commission.

Pursuant to the Sentencing Reform Act of 1984, Mr. Vickers is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 63 months on Count 1 of the information. Upon release, the defendant shall be placed on 5 years' supervised release on Count 1 of the information.

There are a number of conditions that you must comply with.

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** You must cooperate in the collection of DNA as directed by your probation officer. And you must comply with the requirements of the Sex Offender Registration and

1  Notification Act as directed by your probation officer, the
2  Bureau of Prisons, or any state offender registry agency where
3  you live, work, where you're a student, or where convicted of a
4  qualifying offense.
5       So I want to ask you to respond to me regarding this
6  mandatory condition.  Do you understand you must register?
7       **THE DEFENDANT**:  Yes, ma'am.
8       **THE COURT**:  And do you understand that your failure to
9  register may result in additional felony convictions of failing
10 to register?
11      **THE DEFENDANT**:  Yes, Your Honor.
12      **THE COURT**:  It's amazing to me how many people don't
13 register.  They can.  They have the ability.  They know they
14 must, and they choose not to, and they end up back here.  You
15 must register.
16      **THE DEFENDANT**:  Yes, ma'am.
17      **THE COURT**:  There are a number of standard conditions
18 that you're going to be subject to once you're released from
19 prison.  I'm not going to read those to you at this time other
20 than to tell you you must comply with all of them.  They'll be
21 explained to you by your probation officer upon release.  You
22 will read and sign and acknowledge that you understand those.
23      Do you understand?
24      **THE DEFENDANT**:  Yes, ma'am.
25      **THE COURT**:  In addition, you must participate in a

1 program of testing and treatment for substance abuse.  Now, the
2 details of this is going to be overseen by your probation
3 officer.  You'll stay in that program for testing and treatment
4 until your officer is of the opinion that you no longer need
5 the treatment while -- the 5 years that you're on supervised
6 release.

7 You're also going to be required to participate in a
8 program of mental health treatment.  This may be mental health
9 treatment that has as a component sex therapy or the matters of
10 just -- to make sure that, given the nature of this offense,
11 this does not ever happen again.  So you're going to remain in
12 that program until your probation officer releases you and
13 believes that you're at a place where you no longer need it.

14 You shall submit your person, property, house,
15 residence, vehicle, papers, computer, office, data storage
16 devices, your phone.  These things are subject to a search
17 conducted by a United States Probation Officer.  This search is
18 only going to take place if the officer believes -- has
19 reasonable suspicion to believe that you have violated a term
20 or condition of your supervised release, only at a reasonable
21 time and in a reasonable manner, but whomever you're living
22 with must be notified that you're subject to this search.
23 Understand?
24 **THE DEFENDANT:**  Yes, Your Honor.
25 **THE COURT:**  So there are a number of things relating

to the nature of this offense.  You shall comply with all federal and state sex offender regulations in the states where you reside, where you work, where you are a student, or where you travel.  That's every day of every moment you're registered somewhere.

You shall participate in a sex offender treatment program under the administrative supervision of the probation officer until you are successfully discharged.  While participating in this treatment, you will abide by all of the rules and regulations.  Your failure to do so could result in you being revoked and sent back to prison.

You shall be required to submit to a polygraph examination, meaning that you can be asked by your probation officer to submit to a polygraph.  It's not used to revoke you.  It is used to modify conditions, which may indicate that you need additional treatment.  And so that's the nature of -- of why a polygraph examination is required.

You shall not possess or use a computer or other internet-connected device to access the internet except with the prior approval of your probation officer.  You could have access to a computer if it involved your authorized pre-approved employment.  The nature of this charge is that you used a device or devices.  You cannot have access or own or possess a device without the prior approval of your probation officer.

        Do you understand that?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** You shall provide the probation officer with access to any requested financial information. The purpose of that is to verify that you're not spending any money to connect to the internet, that no payments or money is going to enable you to have access to computer devices.

        The defendant shall consent to third-party disclosure to any employer or potential employer if it involves -- if the use -- if the work would involve the use of a computer. So you need to understand that we want you to have employment once you get out of prison, but working with your probation officer, your probation officer will contact your employer and make sure they understand that, at the place of employment, you cannot have access to any inappropriate materials. There will be restrictions placed on that computer.

        Understand?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** You shall be required to submit to periodic, unannounced examinations of the computer system, computer-related devices, which may include retrieval and copying of the memory from the hardware or software or the removal of such system.

        Understand, Mr. Vickers, that you're being closely monitored, so they can require you to produce the hardware, the

1 computer itself, the software that's being used.  You can also
2 be asked to provide all of the passwords or access codes to
3 both access the internet and access the computer.  So you're
4 expected to comply with all of those terms and regulations.
5     Understand?
6     **THE DEFENDANT:**  Yes, ma'am.
7     **THE COURT:**  If in doubt, ask your probation officer
8 first.
9     **THE DEFENDANT:**  Okay.
10     **THE COURT:**  You shall allow the probation officer
11 access to review any photographs or video recordings that you
12 may possess, whether it be on your phone, on a computer.  If
13 it's on a device, you could be asked to -- for the probation
14 officer to see that.
15     With the exception of unanticipated or incidental
16 contact, you shall have no direct, unsupervised contact,
17 whether that be by letters, correspondence, telephone,
18 internet, electronic communications, or through a third party,
19 with children under the age of 18 -- and that simply is
20 addressing the age of this victim in this case being
21 substantially under the age of 18 -- except in the presence of
22 an adult who has been pre-approved by the probation officer.
23     Understand?
24     **THE DEFENDANT:**  Yes, Your Honor.
25     **THE COURT:**  You shall not frequent, access, or loiter

near school grounds, parks, arcades, playground. Anyplace where minor children might congregate, be, stay, play, you cannot, without the prior approval of your probation officer, be at that location. What you have to do is be smart enough to avoid those locations.

Understand?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** You shall have no contact with this victim, none whatsoever, ever, in any form or fashion, not in writing, not electronically, not through a third party or through friends. There is -- you are to have no contact with this victim. Am I clear?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** If any contact occurs, you shall immediately leave the area of the contact. And hear me. If you have contact, you must report it to the probation officer. Here's how to avoid that. Do not have any contact in any form or fashion with this victim. Clear?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** The defendant shall not possess or peruse any authentic, altered, or manufactured visual or auditory material, including but not limited to photographs or digital images, drawings, writings, videos, sound recordings of any scene or anything that depicts or describes sexually explicit conduct or child pornography. You're prohibited from accessing

that. Clear?

**THE DEFENDANT**: Yes, ma'am.

**THE COURT**: So no fine is being ordered in this case due to your inability to pay. If you have not already paid the $100 special assessment, you must do so immediately.

At this time, I'm going to advise you of your right to appeal. You have the right to appeal any sentence imposed illegally or as a result of a miscalculation of the guidelines or one that you think is outside the guideline range or one that you think is plainly unreasonable. If you wish to appeal, you may ask for the court costs to be waived. If you cannot afford an attorney, you can ask the Court to appoint you counsel and one will be appointed for you for purposes of an appeal.

Do you understand?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: I'm going over and have gone over these details about the supervised release very carefully. At 23 years of age, standing in this courtroom, I understand that you must feel somewhat overwhelmed. That is no excuse for understanding what you can and cannot do.

**THE DEFENDANT**: Yes, ma'am.

**THE COURT**: Okay. Mr. Roberts, any matters -- any counts to be dismissed?

**MR. ROBERTS**: Your Honor, pursuant to the plea

1 agreement, the government would move to dismiss Counts 1 and 2
2 of the indictment.
3        **THE COURT:** They shall be dismissed.
4        Mr. Davis?
5        **MR. DAVIS:** Thank you, Your Honor. One final matter
6 with regard to the time Mr. Vickers has already served.
7        **THE COURT:** Okay.
8        **MR. DAVIS:** Mr. Vickers has been in custody since the
9 day of his arrest, which was June 7th. He was initially in the
10 custody of the state authorities in Alabama and came over to
11 make his initial appearance about a month later.
12        **THE COURT:** Okay.
13        **MR. DAVIS:** He has remained in the primary custody of
14 the State of Alabama this whole time as a result of that, even
15 though the marshals have borrowed him for now. Our
16 expectation, frankly, is that those state charges are probably
17 going to be dropped at this point.
18        **THE COURT:** I see.
19        **MR. DAVIS:** And that state charge that he was arrested
20 on is directly relevant to what we're dealing with here, and
21 so, that being the case, I think the guidelines suggest that he
22 should get credit for that time, and we would ask the Court to
23 give him credit for the time since the day of his arrest on
24 June 7th.
25        **THE COURT:** I saw in the presentence that this is a

pending charge in Alabama. That's the charge you're referring to? Was he -- was he incarcerated for any other reason other than this charge?

**MR. DAVIS:** Not that I'm aware of, Your Honor, no.

**MR. ROBERTS:** Not that I'm aware of either.

**THE COURT:** Mr. Roberts, do you have any objection to him receiving credit for the time that he served in the state facility?

**MR. ROBERTS:** No, I think that's appropriate.

**THE COURT:** Okay. You will be given credit -- I will recommend that you be given credit by the Bureau of Prisons for that time that you spent in state custody regarding this charge.

**THE DEFENDANT:** Thank you so much, Your Honor.

**THE COURT:** Any other matters, Mr. Davis?

**MR. DAVIS:** No, Your Honor. Thank you.

**THE COURT:** Okay. Thank you, Counselors.

**MR. ROBERTS:** Thank you, Your Honor.

(CONCLUDED AT 2:05 P.M.)

# **CERTIFICATE**

I, Phyllis K. McLarty, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of Mississippi, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing 18 pages are a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Witness my hand, this 26th day of March, 2020.

/s/ Phyllis K. McLarty
PHYLLIS K. McLARTY, RMR, FCRR, CCR #1235
Federal Official Court Reporter